UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-00903-CR-HUCK/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MOHAMMED SHOUMAN,

    Defendant.
_____/

## OMNIBUS REPORT AND RECOMMENDATIONS

I recently issued a Report and Recommendation that recommended that the Court deny two *pro se* motions that Defendant Mohammed Shouman filed -- a Motion for Compassionate Release (ECF No. 312) and an Emergency Motion for Compassionate Release (ECF No. 318) -- because Shouman failed to exhaust his administrative remedies. (ECF No. 321). During the objection period that followed, at Shouman's request I appointed counsel to represent him. (ECF No. 324).[1]

Rather than file objections to that Report and Recommendation, Shouman's counsel filed two motions: Motion for Court to Recommend Sentencing Designation of Home Confinement to BOP, (ECF No. 325), and Amended Motion for Compassionate Release, (ECF No. 328). The Honorable Paul C. Huck referred both motions to me. (ECF No. 330).

---

[1] By separate order, I vacate my initial Report and Recommendation as it is now moot. (ECF No. 336).

1

In those Motions Shouman argues that his release from prison is warranted because of his age and underlying medical conditions, which place him at greater risk for severe illness from COVID-19. The government filed a response, (ECF No. 329), and on May 21, 2020 I heard oral argument from counsel. Having carefully considered the Motions, Response, oral argument of counsel and the applicable law, for the reasons I explain below I recommend that the Court deny both Motions.

## I.     BACKGROUND

Shouman is serving a term of life imprisonment at the Bureau of Prison's ("BOP") Federal Correctional Center in Coleman, Florida, (specifically, FCI Coleman-Medium). A jury found Shouman guilty of conspiracy to commit offenses against the United States and maliciously damaging and destroying a building by means of fire and explosives. (ECF Nos. 70, 142). The jury was presented evidence that between 1992 and 1994, Shouman and his sons, Mujahad and Thaar, conspired with others to burn down six convenience stores, including Shouman's store, Amal's Market. (ECF No. 255 at 5). Shouman did so for multiple reasons: to eliminate competition, as a favor to friends and to recover insurance proceeds for the destruction of his store which was struggling financially. (*Id*).

The convenience stores Shouman targeted operated 24 hours a day, 7 days a week. Knowing the stores would be occupied, Shouman arranged for them to be firebombed, sometimes more than once. (*Id*. at 5-7). The fire-bombing of the first store resulted in injuries to several individuals, including an individual who suffered brain damage. Shouman nonetheless arranged and paid for the following five arsons. (Presentence Investigation Report at 5-11). The fourth firebombing was of a store that had five people

inside, including James Smith, who died a horrific death. Mr. Smith was burned over 95% of his body, 80% of which was first degree burns; he lived for five days before he died. Two others in that store had less significant injuries. (*Id*. at 8). Despite this, Shouman helped orchestrate two more arsons, the last of which was his own store. In that last arson, coconspirators staged an armed robbery of the unknowing clerk working in Amal's Market. While the clerk and other bystanders were in in the store, the conspirators poured antifreeze throughout the premises and set the building ablaze. As the firebombers fled, they fired shots in the air to force the occupants to stay inside, although those victims ultimately escaped. (*Id*. at 9-11). Shouman was rewarded when his insurer paid him approximately $174,000.

In his current Motions Shouman asserts that if he is exposed to the novel coronavirus, he is at heightened risk of becoming severely ill from COVID-19 because he is 72 years of age and suffers from serious chronic health conditions. (ECF No. 328 at 3-4). Shouman provided written acknowledgement from the Warden of his facility (dated August 2019) that Shouman has been diagnosed with type 2 diabetes, hypertension, osteoarthrosis, angina, ischemic cardiomyopathy[2] and polyneuropathy in diabetes. (ECF No. 328-1). Shouman also reports (without corroborating evidence) that he is a prostate cancer survivor, that he had open-heart surgery in 2004, a heart attack in 2017 at which

---

[2] Wikipedia defines ischemic cardiomyopathy as a type of cardiomyopathy caused by a narrowing of the coronary arteries which supply blood to the heart. It states that patients with ischemic cardiomyopathy typically have a history of acute myocardial infarction, although this can occur in patients with coronary artery disease who have not experienced acute myocardial infarction. (accessible at https://en.wikipedia.org/wiki/Ischemic_cardiomyopathy).

time stints were installed, and that his heart functions at 40%. (ECF No. 328 at 3-4). Further, Shouman asserts (again, without corroboration)[3] that his right knee needs replacement, that it causes him terrible pain, but that a physician advised Shouman that his poor cardiac function precludes surgery. (ECF No. 328-4). In sum, Shouman contends that his age and medical conditions, along with the heightened risk of exposure to the novel coronavirus in prison, warrant his release.

## II. ANALYSIS

In his Motions, Shouman requests the Court to either (1) invoke the First Step Act's compassionate release provision, 18 U.S.C. § 3582(c)(1)(A)(i), and modify Shouman's sentence of imprisonment to time served and place him on lifetime supervised release, or (2) recommend to the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3621(b)(4)(B), that it transfer Shouman to home confinement to serve the remainder of his life term. I address each motion in turn.

### A. Amended Motion for Compassionate Release

"Generally, a court may not modify a term of imprisonment once it has been imposed." *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quotation marks omitted). However, 18 U.S.C. § 3582(c) authorizes courts to reduce a term of imprisonment on a motion from a defendant

> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

---

[3] To be clear, I am not suggesting that Shouman is feigning these medical events and conditions; I am being clear that the Court does not have medical records to confirm these conditions. I do note that the diagnosis of ischemic cardiomyopathy offers support for Shouman's statement that his heart functions at reduced capacity.

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier... *after considering the factors set forth in section 3553(a)* to the extent they are applicable, if the court finds that … *extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….*

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis supplied). Congress did not define extraordinary and compelling reasons, other than to state that rehabilitation alone is insufficient. 28 U.S.C. § 994(t). Rather, it instructed the Sentencing Commission to promulgate "criteria to be applied and a list of specific examples of extraordinary and compelling reasons. *Id*.

The relevant Sentencing Guidelines policy statement ("Policy Statement") reiterates some of these statutory provisions, and adds a condition that a Court may reduce a sentence only where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). In addition, in its Application Note 1, the Sentencing Commission provides four definitions of extraordinary and compelling circumstances. (*Id.*)

In sum, a court can grant relief under Section 3582(c)(1)(A) if it: (1) finds the defendant exhausted his administrative remedies, (2) concludes that extraordinary and compelling reasons warrant release, (3) determines that the defendant is not a danger to the community, and (4) finds that the relevant § 3553(a) factors support a reduction of sentence. The defendant bears the burden of establishing that compassionate release is warranted. In the end, whether the Court grants compassionate release is within its

5

discretion, as section 3582(c)(1)(A) uses the word may, not must. *United States v. Israel*, No. 05 CR 103 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019).

1. Exhaustion of Administrative Remedies

The parties agree that the documentation Shouman attached to his Amended Motion establishes that he fully exhausted his administrative remedies. (ECF Nos. 328 at 11; ECF No. 329 at 5-7). This moots my earlier Report and Recommendation, which was based on an incomplete record. (ECF No. 321).

2. Extraordinary and Compelling Reasons

Application Note 1 to the Policy Statement provides that extraordinary and compelling reasons exist under four circumstances. The first is "**Medical Condition of the Defendant**", which is satisfied where "(i) [t]he defendant is suffering from a terminal illness…" or "(ii) [t]he defendant is suffering from a serious physical or medical condition…or [is] experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sentencing Guidelines Manual § 1B1.13 Application Note 1(**A**).

The second category, "**Age of the Defendant**", is satisfied if the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. *Id.* § 1B1.13 Application Note 1(**B**).

The third category, "**Family Circumstances**", occurs upon "(i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children [or] (ii)

6

[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id*. § 1B1.13 Application Note 1(**C**).

The last is a catch-all category, "**Other Reasons**", which states that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. § 1B1.13 Application Note 1(**D**).

At the May 21st hearing, Shouman's counsel made clear that he relies upon the first and second categories of extraordinary and compelling reasons: medical condition and age.[4]  I address each category below.

---

[4] Shouman argues that the Court is not bound by the categories listed in the Policy Statement because the Policy Statement preceded passage of the First Step Act and has not been amended since. (ECF No. 328 at 8-9). "Some courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release *exist other than those delineated in U.S.S.G. § 1B1.13 n.1*." *United States v. Winner*, No. CR117-034, 2020 WL 2124594, at *2 (S.D. Ga. April 24, 2020) (citing cases) (emphasis added). Other courts continue to limit their analysis to the three specific categories set forth in the Application Note, reasoning that "Congress directed the [Sentencing] Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples.'" *United States v. Lynn*, Case No. 89-0072-WS, 2019 WL 3805349, at *3 (S.D. Ala. Aug. 13, 2019) (quoting 28 U.S.C. § 944(t)). These courts note that Section 3582(c)(1)(A) "as amended by the First Step Act *still* requires courts to abide by 'applicable policy statements issued by the Sentencing Commission.'" *Winner*, 2020 WL 2124594 at *2 (emphasis in original) (quoting § 3582(c)(1)(A). I find this reasoning most persuasive and limit my evaluation of extraordinary and compelling reasons to the subsections (A) and (B) set forth in Application Note 1. It makes most sense to me that if the policy statement "needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts." *Lynn*, 2019 WL 3805349 at *4.

      a.      <u>Medical Condition of the Defendant</u>

Courts have observed that compassionate release due to a medical condition is an "extraordinary and rare event." *United States v. Rodriguez-Orejuela*, No. 03-CR-20774-Moreno at *5 (S.D. Fla. April 28, 2020) (citation omitted). Shouman concedes that he does not suffer from a terminal illness and therefore that is not a justification for his release. Shouman does, however, suffer from serious diagnosed medical conditions: diabetes, hypertension, osteoarthrosis, angina, ischemic cardiomyopathy and diabetic polyneuropathy.

It is not clear that those medical conditions "substantially diminish" Shouman's ability to "provide self-care" within the correctional facility environment. U.S.S.G. § 1B1.13 Application Note 1(A). In his denial of Shouman's request for compassionate release last August, the Warden stated that Shouman is "able to independently attend to [his] activities of daily living and [his] condition does not affect [his] ability to function in a correctional setting." (ECF No. 328-3 at 22). In contradiction, Shouman offers an affidavit from his cellmate, dated last May, who states that he monitors and assists Shouman with certain daily activities, such as helping Shouman to the bathroom and reminding him to take his medicines. (*Id.* at 20). The cellmate writes that he "believes [Shouman] has Alzheimer's or Dementia…." (*Id.*).

Notably, Shouman does not claim that he suffers from serious memory loss nor does he provide any medical evidence of this. More to the point, Shouman offers no medical evidence that the health conditions he identifies "substantially diminish[]" his ability "to provide self-care" and this is not self-evident from the record. U.S.S.G. § 1B1.13

8

Application Note 1(A). This causes me to conclude that Shouman has not established the application of this first definition of an extraordinary and compelling reason. *See e.g., United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) ("Without his medical provider corroborating either of these requirements [that the defendant has a serious medical condition that substantially diminishes his ability to provide self-care, defendant] has not shown a foundation for compassionate release based on his medical condition.").

      b.     Age of the Defendant

Shouman is over age 65 and has served at least 10 years of imprisonment; he thus meets two of the three requirements set forth in the "age" definition of an extraordinary and compelling reason. U.S.S.G. 1B1.13 Application Note 1(B). The question then is whether his medical conditions demonstrate a "serious deterioration" of his physical health because of the aging process. To meet this definition, Shouman must establish that "he is deteriorating so as to justify compassionate release." *Cannon v. United States*, No. 11-048-CG-M, 2019 WL 5580233, at *3 (S.D. Ala. Oct. 29, 2019) (denying compassionate release because, among other reasons, "there is no indication that these conditions have escalated to the point that they have caused a serious deterioration in his physical or mental health.").

The Warden stated that Shouman's medical condition is "stable", without further explanation. (ECF No. 328-1). This may not be inconsistent with Shouman's experiencing a serious deterioration due to his aging process. Although Shouman does not provide

9

supporting medical evidence,[5] the nature of his medical conditions, most notably his osteoarthrosis, angina, and ischemic cardiomyopathy, are consistent with a serious deterioration in physical health because of the aging process. On balance, I conclude that Shouman has shown that he meets the "age of the defendant" definition of an extraordinary and compelling reason.

### 3. Danger to the Community

The court may consider the following when evaluating whether a defendant is a danger to the safety of others or the community: "(1) the nature and circumstances of the offense…; (3) the history and characteristics of the person…; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Shouman's criminal conduct was outrageously destructive and dangerous to others. His participation in the scheme did not depend on his vitality or agility, and I do not believe his poor health leaves him incapable of similar conduct.[6] Below, I address Shouman's failure to accept responsibility for his actions which adds to my concerns about his actions upon release. On the other hand, Shouman no longer owns a business or has competitors; circumstances that apparently motivated him to harm others.

It is of some concern that Shouman proposes to live with his son Thaar Shouman, (ECF No. 328 at 12), who was convicted for his leadership role in the fire-bombing scheme

---

[5] At the hearing, Shouman's counsel said he had requested Shouman's medical records from the BOP but, at that point, none have been provided.

[6] I also note that his prior convictions involve stolen property and fraud and that Shouman's poor health does not preclude him from doing something like this again.

and other crimes. *United States v. Thaar* Shouman, Case No. 95-CR-939-Lenard. Thaar solicited and paid others to burn down competitor businesses and Amal's Market. (*Id.,* ECT No. 165 at 4-5). Later, while serving a 130-month sentence of incarceration, Thaar informed prison officials of a marijuana distribution ring within the prison and assisted law enforcement in its investigation. This led the government to file a Rule 35 motion for Thaar, which the Court granted; it reduced Thaar's sentence to 97 months. (*Id.* ECF Nos. 131, 176, 177). Thaar has since completed his supervised release and is employed. (ECF No. 325 at 14).

It is to Shouman's credit that he was successfully released on bond pending trial. He is now 72 years old and in poor health and presumably this is reflected in the BOP's assessment that Shouman has "minimal…recidivism risk level". (ECF No. 328-4 at 10). Moreover, Shouman's BOP disciplinary record is good; he has only two minor infractions. At the May 21st hearing, the government conceded that the Court might be able to fashion conditions of release, to include home confinement and electronic monitoring, that would reasonably assure the Court that Shouman would not be a danger to others, and I agree that this is possible. If the Court were to consider releasing Shouman to live with his son Thaar, I would suggest seeking the guidance of our Probation Office and holding a hearing to inquire further about Thaar Shouman and to explore conditions of release.

    4. <u>Section 3553(a) Factors</u>

The sentencing factors set forth in 18 U.S.C. § 3553(a) that I believe are relevant to Shouman's bid for compassionate release are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for

11

the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Of course, the Court thoughtfully considered these and other factors at sentencing and concluded that Shouman must be punished by spending the remainder of his life in prison. By promoting, helping organize, and funding these arsons, Shouman displayed a shocking callousness towards others' lives and there can be no debate that his conduct merited harsh punishment. When it imposed this sentence, the Court expected Shouman to grow old in prison, likely succumb to illness over time, and to have his life end in custody. So, the question is, does Shouman's age and poor health merit this Court vacating that sentence in favor of supervised release? It is not an easy question to answer. I believe the answer is no.

If Shouman were terminally ill, with little time to live, or alternatively, had Shouman evolved during his time in custody to demonstrate a deep sense of contrition, and perhaps gone out of his way to serve his fellow inmates, this Court could well find that the purposes of sentencing expressed in section 3553(a) had been satisfied such that he should be released. That is not the case here.

Shouman has never accepted responsibility for his crimes. He did not do so at sentencing (ECF No. 211, at 7; Presentence Investigation Report, at 17, ¶ 65), and he does not now. In his recent *pro se* Motion for Compassionate Release, Shouman wrote "that he is not guilty of this offense…." (ECF No. 312 at 9); (*see also* ECF No. 312 at 14). In the

same document Shouman states he is "remorseful" (*Id.* at 10), which is meaningless given his claim of innocence.

Moreover, Shouman has been dishonest with the Court; in his *pro se* motion he wrote this of himself: "His conduct has essentially been exemplary and his journey began with no criminal history. As a first-time offender, he received the brunt of the justice system due to ill advice and terrible circumstances." (*Id.*). In truth, Shouman was convicted in 1971 of receipt of stolen goods (282 cartons of cigarettes and one carton of gum). In 1990 Shouman was again convicted, with adjudication withheld, of dealing in stolen property and purchase of tobacco products from an unlicensed distributor. And, in 1993 while committing the crimes of conviction here, Shouman was convicted, with adjudication withheld, for insurance fraud and grand theft, and was serving a probationary sentence. (*See* Presentence Investigation Report at 22-23). Shouman's outright dishonesty – that this conviction was his first crime – leads me to doubt the truthfulness of his other claims and how the Court could rely upon Shouman to abide by the conditions of supervised release, if he were to receive the extraordinary accommodation of compassionate release.

We live in difficult times. The novel coronavirus has taken many lives and it will take countless more, and without doubt the close quarters of confinement leave prison inmates especially vulnerable to exposure. Shouman's age and health conditions put him at high risk of serious illness if he develops COVID-19.[7] Fortunately, there is no indication

---

[7] *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, updated May 14, 2020 at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed May 20, 2020).

that FCI Coleman-Medium is currently beset by infection,[8] but this could change overnight. Knowing this, it is difficult to deny a motion for compassionate release. After much thought, I nonetheless believe that is the appropriate outcome here. Accordingly, I recommend that the Court deny Shouman's Amended Motion for Compassionate Release. (ECF No. 328).

### B. Recommendation of Home Confinement

In the event the Court does not grant compassionate release, for the same reasons behind his motion pursuant to § 3582(c)(1)(A), Shouman asks the Court to recommend to the BOP that it release him to home confinement for the remainder of his life term. (ECF No. 325). Shouman invokes 18 U.S.C. § 3621(b)(4)(B) which provides that the BOP, in considering an appropriate correctional facility, can consider "any statement by the court that imposed the sentence…recommending a type of penal or correctional facility as appropriate…." 18 U.S.C. § 3621(b)(4)(B).

The BOP determines "the place of a prisoner's imprisonment." 18 U.S.C. § 3621(b). "[A] district court's recommendation to the [BOP] is just that – a recommendation." *United States v. Cebellos*, 671 F.3d 852, 855 (9th Cir. 2011). This recommendation "shall have no binding effect on the authority of the Bureau ... to determine or change the place of imprisonment of that person." 18 U.S.C. § 3621(b).

---

[8] *See* Federal Bureau of Prisons, *COVID-19 Cases*, updated May 26, 2020 at https://www.bop.gov/coronavirus/ (accessed May 26, 2020).

14

Shouman directs the Court to a recent memorandum the Attorney General issued to the BOP that encourages it to increase its transfer of inmates to home confinement at institutions most affected by COVID-19. The memorandum identifies specific prisons that have significant levels of infection (FCI Coleman-Medium is not named), and asks the BOP to "give priority to these institutions, and others similarly affected" and to determine if inmates with COVID-19 risk factors are "suitable candidates for home confinement" and if they are, to transfer those inmates to home confinement where they will serve out their sentence. Memorandum from the Att'y Gen. to the Director of Bureau of Prisons (Apr. 3, 2020) (accessible at https://www.justice.gov/file/1266661/download).

If the Court decides to not grant Shouman compassionate release where it has the authority to do so – under § 3582(c)(1)(A) – then I see no reason why it would recommend that the BOP do what the Court will not do. For that reason, I recommend that the Court deny Shouman's Motion for Court to Recommend Sentencing Designation of Home Confinement to BOP. (ECF No. 325).

If the Court adopts my recommendation, I would further recommend that it make clear in its order that the Court does not mean to discourage the BOP from moving Shouman to home confinement if, at any point, the BOP determines that he is appropriate for transfer as set forth in the Attorney General's April 3, 2020 Memorandum. The BOP is best suited to know, in real time, if Shouman's health, or the safety of FCI Coleman-Medium changes, such that Shouman's home confinement would become appropriate.

## III.     RECOMMENDATION

For the foregoing reasons, I respectfully recommend that the Court **DENY** Shouman's Motion for Court to Recommend Sentencing Designation of Home Confinement to BOP, (ECF No. 325), and **DENY** Shouman's Amended Motion for Compassionate Release, (ECF No. 328).

## IV.     OBJECTIONS

At the hearing, counsel agreed to a shortened objection period and that they would both file any objections on a single date the Court sets. Thus, any party that wishes to file written objections to this Report and Recommendation with the Honorable Paul C. Huck must do so **no later than June 5, 2020**. Judge Huck is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), 28 U.S.C. § 636(b)(1); Fed.R.Crim.P. 59(b), 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** this 26th day of May 2020, at Miami, Florida.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Paul C. Huck
    Counsel of Record